UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAKEVIEW NEUROCARE PENNSYLVANIA, INC, | ) ) | CIVIL ACTION NO. 1:17-cv-0396 |
| Plaintiff | ) ) | (ARBUCKLE, M.J.) |
| v. | ) ) | |
| INDEPENDENCE BLUE CROSS, | ) | |
| Defendant | ) | |

MEMORANDUM ON MOTION TO DISMISS
(Doc. 5)

Presently before the court is a Motion to Dismiss filed by Defendant Independence Blue Cross ("IBC") on May 18, 2017. (Doc. 5). IBC contends Plaintiff Lakeview NeuroCare Pennsylvania's ("Lakeview") breach of contract claim must fail because no contractual relationship formed between the parties due to an invalid assignment. Lakeview contends the assignment was valid. For the reasons stated herein, I will DENY the Motion to Dismiss.

I. BACKGROUND AND PROCEDURAL HISTORY

Lakeview is the former operator of a therapeutic residential care facility in Lewistown, Pennsylvania, which provided care to patients with neuro-developmental conditions. (Doc. 1, ¶5). IBC insured patient "JA" at all relevant times through its agent, Magellan Behavioral Health ("Magellan"). *Id.* at ¶7. In

pertinent part, the insurance policy issued by IBC to "JA" includes two non-assignment clauses:

> Any rights of a Member to receive benefits under the Group Program Document and Benefit Booklet are personal to the Member and may not be assigned in whole or part to any person, Provider, or entity, nor may benefits be transferred, either before or after Covered Services are rendered. . . .
>
> The right of a Member to receive benefit payments under this Program is personal to the Member and is not assignable in whole or in part to any person, Hospital, or other entity nor may benefits of this Program be transferred, either before or after Covered Services are rendered. (Doc. 5, Ex. A)

In March of 2014, Lakeview began corresponding with IBC regarding admission, care, and payment for "JA." *Id.* at ¶8. Lakeview claims IBC provided verification for payment of "JA's" treatment, advising they would remit to Lakeview, an out-of-network provider, 70% of the treatment costs, leaving responsibility for the remaining 30% with "JA's" guardian. *Id.* at ¶9.

Lakeview claims that on April 9, 2014, an IBC representative advised: (1) benefits for "JA's" proposed stay and treatment would be paid notwithstanding Lakeview's out-of-network status; (2) there was no limitation on the number of days IBC would cover regarding "JA's" treatment; and (3) precertification was unnecessary. *Id.* at ¶10.

"JA" was admitted to Lakeview in April of 2014. *Id.* at ¶11. On April 10, 2014, Lakeview claims IBC informed them payments would begin. *Id.* at ¶12.

Lakeview claims IBC, through Magellan, certified "JA's" stay and care every seven (7) days for eighteen (18) consecutive months.[1] *Id.* at ¶13. Lakeview contends these continued reauthorizations caused Lakeview to provide care for "JA" for many months without seeking alternatives. *Id.* at ¶15.

Lakeview remitted to IBC bills for "JA's" care every thirty (30) days. *Id.* at ¶17. Lakeview did not receive denials from IBC, but rather requests for clarification and correction. *Id.* Specifically, Lakeview alleges that on one occasion Lakeview made corrections regarding "JA's" diagnosis, rebilled IBC, and IBC authorized payment. *Id.* at ¶18.

In March of 2016, IBC claimed, allegedly for the first time, that there was a ninety (90) day benefit limit for 2014, a forty-five (45) day benefit limit in 2015, and benefits were payable at 50%. *Id.* at ¶19. IBC allegedly announced these policies after having authorized payments for the first fourteen (14) months of "JA's" care. *Id.*

In September of 2016, IBC paid Lakeview $28,550 for one month of "JA's" care. *Id.* at ¶20. IBC allegedly owes a total of $212,800 to Lakeview for "JA's" care. *Id.* at ¶21.

On March 7, 2017, Lakeview filed a Complaint alleging eight (8) counts against IBS: (1) Bad Faith Insurance Practices; (2) Breach of the Pennsylvania

---

[1] Lakeview claims it is in possession of approximately fifty-two (52) letters from IBC supporting this assertion. (Doc 1, ¶14).

Unfair Trade Practices and Consumer Protection Law; (3) Fraud/Misrepresentation; (4) Reasonable Expectation; (5) Unjust Enrichment; (6) Promissory Estoppel; (7) Breach of Contract; and (8) Breach of Duty of Good Faith and Fair Dealing. (Doc. 1).

On May 18, 2017, IBC filed the instant Motion to Dismiss for Failure to State a Claim (Doc. 5) and a corresponding Brief in Support (Doc. 6). On June 15, 2017, Lakeview filed its Brief in Opposition. (Doc. 8).

II. <u>STANDARD OF REVIEW</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." In determining whether a complaint should be dismissed for this reason, the Court must accept as true all allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citing *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997). Additionally, a court need not "assume that the [plaintiff] can

prove the facts … that [the plaintiff] has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

As the United States Supreme Court held in *Bell Atlantic Corp. v. Twombly*, in order to state a valid cause of action a plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." 550 U.S. 544, 555(2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In keeping with the principles of *Twombly*, the Supreme Court underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Ashcroft v. Iqbal*, the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. 662, 679 (2009). According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679 (citing *Twombly*, 550 U.S. at 555). Rather, in conducting a review of the adequacy of complaint, the United States Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. A complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which provides:

A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

III. DISCUSSION

The instant Motion to Dismiss concerns the enforceability of the non-assignment clause contained in the "JA's" IBC insurance policy. IBC challenges Lakeview's breach of contract claim[2] by attacking the validity of the purported contract between itself and Lakeview. That is, IBC contends the insurance contract between itself and "JA" contains a valid non-assignment clause, rendering "JA's" assignment to Lakeview invalid. Therefore, Lakeview cannot bring a breach of contract claim against IBC because there is no contract between these two parties. (Doc. 6, pp. 5-6).

IBC frames the issue before the court as: "whether [the court] should follow Pennsylvania law by enforcing the non-assignment clause in the [IBC] insurance

---

[2] "Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

policy and dismissing Lakeview's Complaint with prejudice." (Doc. 6, p. 2). In IBC's view, a "clear and unambiguous" non-assignment clause in an insurance policy is enforceable under Pennsylvania law if the insurer—in this case, IBC—does not provide written consent to the assignment. *Id.* at 4-5. In support of its position, IBC relies heavily on *High-Tech-Enters., Inc. v. General Accident Ins. Co.*, 635 A.2d 639 (Pa. Super. Ct. 1993). In *High-Tech*, an automotive body shop brought action against an automobile insurer for unpaid benefits owed for repairs to insured's car. *Id.* at 641. The body shop relied upon an assignment of rights from the insured to bring the claim, but failed to obtain the insurer's written consent for the assignment. *Id.* The trial court dismissed the complaint for want of written consent from the insurer, finding that the insured, not High-Tech, was the real party to the action. *Id.* The appellate court affirmed, stating: "The non-assignment language of the insurance policy is clear and unambiguous . . . [and] . . . [w]ithout his insurer's written consent, [the insured]'s alleged assignment of his contractual rights under the policy never became effective." *Id.* at 641-42.

    Here, IBC contends the non-assignment clause in the instant policy must be enforced because "JA" never obtained written consent from IBC to assign the policy to Lakeview. (Doc. 6, p. 5). Accordingly, Lakeview would have no right to bring suit against IBC as no contractual relationship formed between the parties as a result of the non-assignment clause. (Doc. 6, p. 6).

Lakeview argues the Motion to Dismiss should be denied because IBC has not shown failure to state a breach of contract claim. (Doc. 8). Lakeview argues the IBC non-assignment clause is void as against public policy because "post-loss assignments . . . do not increase the risk to the insurer associated with an assignee, as the insurer's payment obligation has already become 'fixed.'" (Doc. 8, pp. 8-9 (citing *Egger v. Gulf Ins. Co.*, 903 A.2d 1219, 1224 (Pa. 2006); *Nat'l Metal Servs., Inc. v. Metro Life Ins. Co.*, 49 A.2d 382 (Pa. 1946)). Specifically, Lakeview contends that because the assignment was post-loss—after "JA" received care, IBC was billed, and IBC failed to pay—the non-assignment clause was not enforceable. (Doc. 8, p. 9) (citing *Egger,* 903 A.2d at 1224).

Lakeview also points out that IBC ignores the applicable case law from *Egger,* 903 A.2d 1219 (2006), a case in which the Pennsylvania Supreme Court held that a non-assignment clause was unenforceable after an insured-beneficiary sustained a loss under the terms of the insurance policy. In making its determination, the *Egger* court discussed the *High-Tech* case, as well as other previous holdings regarding the applicability of non-assignment clauses. *Id.* at 1222-27. It should be noted that IBC cites directly to the *Egger* case in the beginning of their argument section (Doc. 6, p. 4), quoting:

> Generally, non-assignment clauses are included in insurance policies for the protection of insurers. Such clauses are designed to guarantee that an increase of the risk of loss by a change of the policy's ownership cannot occur without the consent of the insurer. Because

non-assignment clauses limit the amount of risk that the insurer may be forced to accept, courts will generally strike down an insured's attempt to assign its policy to a new insured. *Egger*, 903 A.2d at 1226 (citing *Continental Cas. Co. v. Diversified Indus., Inc.* 884 F.Supp. 937, 946 (E.D. Pa. 1995)).

However, IBC fails to include the second, and more applicable, half of this quotation, which concludes:

> Consistent with the general purposes of non-assignment clauses, however, courts are reluctant to restrict the assignment of an insured's right to payment which has already accrued. Therefore, because an insured's right to proceeds vests at the time of the loss giving rise to the insurer's liability, restrictions on an insured's right to assign its proceeds are generally rendered void. *Id.*

The *Egger* Court explains that the holding in *High-Tech* is not as straightforward as IBC indicates, noting: "[f]ederal courts, when applying Pennsylvania law in analogous circumstances, have . . . validated post-loss assignments made *without* consent of the insurer." *Id.* at 1226 (citing *Viola v. Fireman's Fund Ins. Co.*, 965 F.Supp. 654 (E.D. Pa. 1997)) (emphasis added).[3] Put another way, "despite the presence of a non-assignment clause in an insurance contract, '[a]n assignment of the policy of the policy or rights thereunder after the occurrence of the event, which creates the liability of the insurer, is not [] precluded.'" *Viola*, 965 F.Supp. at 658 (1997) (citing *Nat'l Mem'l*, 49 A.2d at 383).

---

[3] The court explains that a "loss" in this context is "the occurrence of the event, which creates the liability of the insurer." *Egger*, 903 A.2d at 1226 (citing *Nat'l Mem'l Services, Inc. v. Metro Life Ins. Co.*, 49 A.2d 382 (Pa. 1946)).

The *Egger* court also noted: "The purpose of a no[n-]assignment clause is to protect the insurer from increased liability, and after events giving rise to the insurer's liability have occurred, the insurer's risk cannot be increased by a change in the insured's identity." *Egger*, 903 A.2d at 1226 (citing G. Couch, Encyclopedia of Insurance Law §35.7 (3d ed. 1995)). The *Viola* court added:

> [A]fter a loss has occurred, the right of the insured or his successor in interest to the indemnity provided in the policy becomes a fixed and vested right; [and] . . . is an obligation or debt due from the insurer to the insured, subject only to such claims, demands, or defenses as the insurer would have been entitled to make against the original insured. 965 F.Supp. at 958 (1997).

Applying these principles to the instant case and accepting Lakeview's allegations to be true, it is clear the Motion to Dismiss must be denied. In construing the Complaint in the light most favorable to Lakeview, the assignment occurred after "JA's" treatment began and, therefore, the assignment occurred after the loss occurred. Because a non-assignment clause is not enforceable after a loss occurs, the instant non-assignment clause does not bar Lakeview's breach of contract claim. Even if written consent were required for a post-loss assignment, which it is not, IBC allegedly certified "JA's" care on a weekly basis for eighteen (18) consecutive months, authorized monthly payments, and even made corrections on bills from Lakeview. It would be inconsistent to conclude this assignment was not supported by written consent given these alleged facts. It is for these reasons I will deny the Motion to Dismiss regarding the breach of contract claim.

Finally, Lakeview argues in the alternative that the Motion to Dismiss should be denied because IBC fails to address any claims other than breach of contract. Given that I have found IBC fails to meet its burden to show that dismissal is required for the breach of contract claim, I find that it is of no consequence that IBC does not address the other claims within the Complaint. Thus, I will deny the Motion to Dismiss in full.

IV. CONCLUSION

For the aforementioned reasons, I will DENY IN FULL the Motion to Dismiss. An appropriate order shall issue.

Date: October 5, 2017            BY THE COURT

                                            *s/William I. Arbuckle*
                                            William I. Arbuckle
                                            U.S. Magistrate Judge